Raymond L. Wilkes, J.
The sole issue to he determined herein concerns itself with an interpretation by this court of the provisions of section 399-a of the General Business Law of the State of New York applicable to contracts executed or renewed after October 1, 1961, which statute reads as follows: “ § 399-a. * * * 2. No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforcible, against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall ‘ give ’ to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.” (Italics and quotation marks supplied.)
Reduced to essentials the germane facts in this controversy consist of the following:
1. On May 1, 1958, the plaintiff and the defendant (eff. May 15, 1958) entered into a written contract pursuant to the terms of which the plaintiff became obligated to supply certain maintenance services to the defendant, same to be paid for by the defendant at the rate of $11.25 per month. The paragraph therein which evokes section 399-a of the General Business Law reads as follows: “ This service is to remain in force for a period of forty-eight months and this contract is to continue for additional periods of forty-eight months each unless a notice of termination by registered mail is given thirty days prior to the expiration of any such period.”
*444 a. The plaintiff in its endeavor to comply with the provisions of the above-referred-to statute mailed its 15-day written notice calling the attention of the defendant to the existence of the automatic renewal clause in the afore-mentioned contract on March 2, 1962, by certified mail return receipt requested.
b. 'Said letter was received by the defendant on March 22, 1962, which was concededly within the “ at least fifteen days ” period commanded by the statute.
c. March 2, 1962, the plaintiff’s date of mailing antedates the minimal 15-day notice period mandated by the statute.
d. The March 2,1962, date of mailing by the plaintiff squarely poses the question now being determined, namely, whether or not said mailing date is controlling, rather than the March 22, 1962 date of receipt by the defendant of the plaintiff’s notice.
If the former date were to apply the defendant must prevail herein. If the latter date is applicable the plaintiff is entitled to have judgment rendered in its favor.
It is the considered view of this court that its inquiry must address itself not alone to the specific question of whether or not the date of mailing or the date of receipt is applicable but that in addition it must embark upon a reasonable endeavor to ascertain what the legislative intent was when the statute at issue herein was enacted, particularly since this appears to be an issue not heretofore decided by an appellate court of this State.
What better source to refer to for guidance than the trenchant thoughts so transparently illumined by the late Mr. Justice Benjamin N. Cardozo in his priceless and ageless work “ The Nature of the Judicial Process ” wherein he says (pp. 14-15): ‘1 Where does the judge find the law which he embodies in his judgment? There are times when the source is obvious. The rule that fits the ease may be supplied by the constitution or by statute. If that is so, the judge looks no farther. The correspondence ascertained, his duty is to obey. The constitution overrides a statute, but a statute, if consistent with the constitution, overrides the law of judges. In this sense, judge-made law is secondary and subordinate to the law that is made by legislators. It is true that codes and statutes do not render the judge superfluous, nor his work perfunctory and mechanical. There are gaps to be filled. There are doubts and ambiguities to be cleared. There are hardships and wrongs to be mitigated if not avoided. Interpretation is often spoken of as if it were nothing but the search and the discovery of a meaning which, however obsecure and latent, had none the less a real and ascertainable pre-existence in the legislator’s mind. The process is, indeed, that at times, but it is often something more. The ascer *445 tainment of intention may be the least of a judge’s troubles in ascribing meaning to a statute. ‘ The fact is,’ says Gray in his lectures on the ‘ Nature and Sources of the Law,’ ‘that the difficulties of so-called interpretation arise when the legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present.’ ” (Italics supplied.)
With the foregoing well in mind, it is the conclusion of this court that had the Legislature intended that the date of mailing of the plaintiff’s notice be controlling it would have unambiguously so expressed itself in the statute. Particularly am I persuaded to this view by the practical realities of what actually transpired herein, namely, that the defendant actually received notice of the automatic renewal provision of its contract with the plaintiff well within the minimal 15-day period provided for in the statute. When all is said and done I believe that that is all that the Legislature in its infinite wisdom wanted to see accomplished in cases of like character, namely, that the person receiving the services have called to his attention the danger of automatic renewal within the period of time mandated by the statute. The defendant’s rights were done no violence, nor was his potential for liability augmented by the fact that the plaintiff mailed its notice on March 2,1962, and chose, such as it was, the hazard of registered receipt requested rather than that it be “ served personally or by certified mail,” as the statute directs. (See Matter of Cheesman v. Cheesman, 236 N. Y. 47, 49, revg. 203 App. Div. 533, 535-536; Matter of Stern v. Electrol, Inc., 18 AD 2d 1117 [3d Dept.].)
Although this court shares no inordinate degree with the Legislature its ostensible aversion to automatic renewal contracts per se it is in view of the foregoing nonetheless constrained and indeed does hereby render its judgment in behalf of the plaintiff for the sum of $236.25, together with interest from September 1,1964, as well as the costs of this action.